## OLIVARI *v.* MERCHANT.[1]

(*District Court, E. D. New York.*　November 9, 1883.)

CHARTER-PARTY—DEMURRAGE—HEAVY CARGO—DANGER TO LIGHTERS—LIABILITY FOR DELAY.

> In an action on a charter-party to recover freight and demurrage, the charterer set up by way of recoupment a claim for damage to lighters employed to receive the cargo, and for detention of the lighters. It appears that there was six days' demurrage, which was caused partly by the necessity to stop discharging on various occasions to permit canal-boats to pass the vessel from an elevator in the slip, and partly by the refusal of the lighters to permit the discharge of the cargo upon them by a chute, on account of the large size of some of the pieces of cliff-stone of which the cargo consisted, and partly by the failure of the lighters to be along-side and ready, and partly from rain.
>
> *Held,* that the charterer, and not the ship, was responsible for the delay caused by the necessity of allowing the canal-boats to pass, as the place of discharging caused the delay and the charterer selected the place; that the duty of the ship was performed by discharging the stone as received, and there was no obligation on the ship to break the large pieces of stone, and it was not the ship's duty to sheathe the lighters with boards to prevent damage to them from the large stones; and that, as the stone could have been landed on a pier without injury to the pier, and the charterer chose to have it landed in lighters, he was bound to provide lighters capable of receiving it by the ordinary method, and he was liable for the delay caused by the refusal of the lighters to receive it; that the ship was not bound to use a longer chute than customary in order to avoid a danger caused by the charterer's deciding to receive his cargo in lighters; that as it appeared that the ship was able and ready to discharge the amount specified in the charter per day, weather permitting, the charterer had no claim on the ship for delay or injury to lighters, but was himself liable for the six days' demurrage, and also for the amount paid to a tug to change the berth of the ship at the request of the charterer.

In Admiralty.

*Ullo & Davison* and *Chas. E. Le Barbier,* for libelant.

*Hawkins & Gedney,* for respondent.

BENEDICT, J. This action is brought upon a charter-party to recover freight and demurrage. The respondent denies all liability for demurrage, and against the claim of freight sets up by way of recoupment a claim for damage done to certain lighters employed by him to receive the cargo, and also for detention of such lighters occasioned by the neglect of the ship to deliver the cargo as required by the charter-party. The cargo consisted of cliff-stone, at least 80 tons of which were by the terms of the charter to be delivered per day. This provision, coupled with the character of the cargo, warrants the conclusion that it was the intention of the parties that the cargo should be landed by means of tubs and a chute. In this manner 80 tons per day could be discharged without difficulty, and at that rate the whole cargo could have been discharged within the 10 days allowed by the charter-party for discharging the vessel. The vessel was at her berth ready to discharge on May 12th. The discharge was not completed until May 30th, being 16 working days from the time the

---

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

vessel reached her berth, and the question then arises, who is responsible for this delay? The evidence shows several causes for the delay. Part of it was caused by the necessity to stop the discharging on various occasions in order to permit the passage of canal-boats past the vessel to and from an elevator which was in the slip where the vessel was discharging. This accounts for the omission to discharge at the rate of 80 tons per day on the sixteenth and seventeenth of May. For this delay the charterer and not the ship is responsible, because the place of discharging caused the delay, and the charterer selected the place.

Another part of the delay arose from a difficulty with the lighters sent by the charterer to receive his cargo from the ship. As before stated, all parties understood that the stone was to be landed by means of a chute, and the defendant selected certain lighters to be the receptacle of the stone when it was so landed. When these lighters came to receive the stone from the chute it was found that some of the pieces of stone were of such size as to damage the lighters when they emerged from the chute, or, at least, to give rise to a well-grounded fear that such damage would be caused. Whereupon the lighters refused, for a time, to permit the discharge of the cargo to be continued unless relieved from this danger, and insisted that it was the duty of the ship to break the larger pieces of stone before sending them down the chute. This contention was without foundation in law. The duty of the ship was performed by discharging the stone in the condition it was received, and there was no obligation resting on the ship to break the larger pieces of stone. It was also insisted that, if the ship would not break the stone, she should sheathe the lighters with boards to prevent injury from the large pieces. But, assuming that the proper way to relieve the lighters from danger of injury from the stone was to sheathe them with boards, it was no part of the duty of the ship to furnish such a sheathing. Plainly, the stone could have been landed on a pier, by means of the chute employed, without danger of injury to the pier from the larger stones. The defendant chose for his own interest to have the cargo landed directly into the lighters, and he was bound to provide lighters capable of receiving it. The delay caused by the refusal of the lighters to receive cargo cannot therefore be charged to the ship.

It has been urged that if a longer chute had been used there would have been no danger of injury to the lighters, and that it was negligence on the part of the ship not to provide a longer chute. The evidence shows that the chute employed was of the usual length. I do not doubt that with the chute as it was, the cargo could have been landed upon the pier without any difficulty, and am unable to hold the ship bound to provide a chute longer than customary in order to avoid a danger caused by the charterer deciding to receive his cargo in these lighters.

All the delay not caused by the necessity to move the ship, and

the refusal to receive the cargo on account of the size of some of the stones, appears to have arisen from the failure of the lighters to be along-side the ship and ready to receive cargo, or from rain, for which delay, of course, the ship is not responsible, it appearing that she was able and ready to discharge 80 tons per day when weather permitted. I am of the opinion, therefore, that the charterer has no claim upon the ship, either for delay or for injury to the lighters, and is liable for the balance of freight unpaid, amounting to $500.14. He is also, for the reasons already stated, liable for six days' detention of the vessel, which, at the rate mentioned in the charter-party, amounts to $293.70. In addition to these sums I am of the opinion that the libelants can recover $14 paid by them to a tug employed to move the ship from the berth selected by the charterer to another berth where the discharging could go on without interruption from passing boats, such expenditure having been made at the request of the charterer, and being incidental to the discharge of the cargo. The libelant is also entitled to recover interest on the above amounts.

Let a decree be entered accordingly.